Steamboat Madison vs. Wells.

STEAMBOAT MADISON vs. WELLS.

1. The 1st sect., article 25 "practice in courts of justice," providing that no person offered as "a witness shall be excluded by reason of his interest in the event of the suit," renders the evidence of a witness, contingently liable, admissible. His liability effects his credibility, not his competency.

2. If a witness be excluded, as incompetent, at the instance of a party, he cannot cure the error of excluding the evidence, by admitting a part of the witness' statement to go to the jury. The evidence of the witness might, in other particulars, be important to the party proposing to examine him.

3. If one takes possession of a boat, without the consent of the owner, makes a contract of affreightment, and violates it, the boat is not liable, under the "act concerning boats and vessels."

## APPEAL from St. Louis Court of Common Pleas.

STATEMENT OF THE CASE.

This was an action, instituted by the plaintiff in the St. Louis court of common pleas, Aug. 9th, 1849, against the steamboat Madison, under the act of the general assembly, entitled "an act concerning boats and vessels," to recover damages for an alleged mal-performance of a contract of assignment.

The plaintiff in his complaint alleges, substantially that he was the owner of a certain quantity of wood which was laden upon a flat boat in the Mississippi river, within the limits and at the northern part of the city of St. Louis. That the steam tow boat Madison was a vessel used in navigating the Mississippi river and other navigable waters of the State of Missouri, for towing flat boats and other craft. That a contract was made in behalf of the plaintiff with the master of said tow boat, to tow the said flat boat with the plaintiff's wood laden upon it, from the ferry landing in north St. Louis to the foot of Ashley street in said city. That in pursuance of said contract, the master of the tow boat undertook, for a consideration, to tow the said flat boat and wood to the place aforesaid, which was so negligently and unskillfully done, that the said flat boat was sunk, and the wood laden upon it became a total loss to the plaintiff, to his damage, &c., &c.

The suit was defended by Daniel A. Rawlings, who, in his answer, denied that the alleged contract of affreightment was made by him, or by any one authorized to make such a contract on account of the boat, &c.

Hawkins was not master, &c.

He also alleged that he was sole owner of the Madison, and that Thomas Rawlings was not master, &c.

In order that the relevancy of much of the evidence that is contained in the record may be seen, it is proper to explain that the owner of the flat boat instituted a suit at the same time against the tow boat, and by consent of parties, the same proofs were heard in both cases, and the verdict in one was to determine the other.

At the trial, the plaintiff proved the contract for the towing of the flat boat and wood, substantially as set out in his complaint. That the contract was made with Thomas Rawlings, who then was on said tow boat, and assumed to act as master thereof. That said Raw-

Steamboat Madison vs. Wells.

lings, for the consideration or price agreed upon, which was paid to him, took the said flat boat in tow, with said tow boat, and proceeded to a point in the river, a short distance above the foot of Ashley street, and there unlosed the flat boat from the tow boat. That the flat boat by means of light winds and the rough condition of the water, became unmanageable ahd drifted against a steamboat near by, and was sunk, and both the flat boat and the wood laden upon it, became a total loss to the owners.

Upon the question, whether the towing was done in a diligent and skillful manner; there was mucn conflict of testimony, and there was also conflicting testimony in respect to the making of the contract for towing.

It was proved, also, that the tow boat Madison was owned at the time, by Daniel A. Rawlings, who defended the suit, and the brother of Thomas Rawlings who made the contract for towing. That said tow boat had been used in the Mississippi and Missouri rivers, during the spring and summer of 1849, for the purpose of towing wood-boats, flats and other water craft. That in May or June, 1849, said Thomas Rawlings had acted as master for two trips. The language of one of the witnesses was, "that he had seen Thomas Rawlings on the Madison, running her during the spring and summer of 1849. She was employed in towing " Another witness said, "that the Madison was towing wood-boats in the summer of 1849. That D. A. Rawlings was master when here; at other times, Henry Dicker and Tom Rawlings commanded a few trips. Had made contracts with Dicker—had known Tom Rawlings to receive pay of bids for towing. Did not know how often Tom run the Madison in the summer of 1849, but he run her frequently." Another witness said, "that Daniel Rawlings when on the Madison had charge of her. Henry Dicker was sometimes master of her, and Tom was sometimes also." Another witness stated, to the effect that he was present when the contract for towing the flat boat was made, and knew that the person with whom it was made was commander of the Madison.

It was also proved that Daniel A. Rawlings resided in St. Louis; that he left home in the early part of July, 1849, and went to Louisville, Ky., and did not return to St. Louis until after this suit was instituted; that at the time he left home he put his, the said boat, in charge of H. Gray, and gave directions that the same should not be used while he was gone.

Thomas Rawlings (who was a witness in behalf of the defendant) testified that he had no authority or permission from his brother or his agent to use the boat in this instance, and that the money received for towing the flat boat, he, Thomas, appropriated to his own purposes. H. Gray, the agent, in whose charge the tow boat was left, when D. A. Rawlings went to Louisville, also testified that Thos. Rawlings used the boat for towing said flat boat without his, the said agent's knowledge or consent.

The defendant in the course of the trial offered the testimony of Isaac H. Sturgeon, who was one of the securities in the bond given in this case for the release of the boat, under the provisions of the act concerning boats and vessels.

The plaintiff objected to the competency of Sturgeon's testimony on this ground, that he was such security ; and the court sustained this objection, and the defendant duly excepted to the ruling of the court. But the plaintiff at the time admitted in evidence the statement of said Sturgeon, to wit: "that he sold the boat Madison to D. A. Rawlings, and that Rawlings went to Louisville early in July, 1849, leaving orders for the boat to remain tied up."

The contract for the towing of the flat boat with Thomas Rawlings, was made by S. W. Robbins, who was bailee of the flat boat for the purpose of boating or transporting wood to St. Louis market, and had undertaken with Wells, the plaintiff, in this case, to transport the wood in controversy to St. Louis. Robbins was a witness for the plaintiff, and was by him duly released from all liability on account of the loss of the wood. Robbins' testimony was contradicted by witnesses of defendant, and his testimony was attacked on the ground of interest in the wood and flat.

This, substantially, was all the evidence in the case.

At the instance of the plaintiff the court gave the following instructions:

Steamboat Madison vs. Wells.

1. If the jury believe from the evidence that before the making of the alleged agreement between Robbins and T. Rawlings, said Rawlings with the knowledge or consent of the owner of the steam tow boat Madison, had frequently used said boat and acted as commander thereof, in the ordinary navigation in which said boat was used, and if at the time of the making of the alleged agreement, said Rawlings had said boat under his control, and acting as commander thereof, then he was competent to make the alleged agreement, and the same is binding on said boat. Therefore, if the jury believe from the evidence that the said Rawlings while having said boat under his control, and while acting as commander thereof, agreed in behalf of said boat to tow the flat and wood in question from the upper ferry landing to the wood-yard of C. & Co., at the foot of Ashley street, and that said contract was so negligently and unskilfully performed that said flat and wood became lost to the plaintiffs, the jury should find for the plaintiff.

2. If Robbins hired the flat boat in question for the purpose of boating wood to market, and that he used said boat with ordinary care and skill for the purpose for which said boat was hired to him, if said boat while being thus used was lost without any fault or neglect on the part of said Robbins, or the person in charge of said boat, the said Robbins is not liable for such loss.

The following instructions asked by the defendant were refused by the court.

1. If the jury find from the evidence that said agreement was made with one Thomas Rawlings, but that said Thomas had no authority to use said steam boat Madison, or act as Captain or master thereof at the time said agreement was made, then said boat Madison is in no case liable, and the jury will find for the defendant.

2. It is incumbent upon the plaintiff in this suit to show that the sinking and loss of said wood boat and its contents were occasioned by the negligence, mismanagement, or unskilfulness of the persons navigating the Madison, or was caused by a non-performance of an agreement for the towing of said wood-boat, made with the captain or master of the Madison, who at the time was duly authorized to act in that capacity (or who prior to that time had been entrusted with the management of the Madison, so that he was generally known as the master or captain thereof.)

3. If the jury find from the evidence that the Madison was used for the towing of said flat boat without the knowledge or consent of the owner or agent thereof, by persons having no authority from said agent or owner to use said boat Madison, they will find for the defendant.

4. If the jury find from the evidence the owners or persons having charge of said flat boat agreed that the towing of the same should be at their own risk, then the Madison is not liable, unless it is clearly proved that the loss of the flat boat was occasioned by gross negligence or mismanagement of the persons navigating the said Madison.

5. If the jury believe from the evidence that said wood-boat was safely landed and delivered to the persons properly in charge thereof by the Madison, at a point or place by them designated, then the Madison is in no way liable in this action, and the jury will find for the defendant.

Instructions given by the court on its own motion, and excepted to by the defendant.

If the jury find from the evidence that the said agreement was made with one Thomas Rawlings, but that said Thomas Rawlings had no authority to use said steamboat, or act as captain or master thereof, at the time said agreement was made, or had not previously been generally known as captain thereof, then said boat Madison is in no case liable, and the jury will find for defendant.

It is incumbent upon the plaintiff in this action to show that the sinking and loss of said boat and its contents were occasioned by the negligence, mismanagement, or unskilfulness of the persons navigating the Madison, or was caused by a non-performance of an agreement for the towing of said wood-boat, made with the captain or master of the Madison, who was at the time duly authorized to act in that capacity, or who, prior to that time, had been entrust-

ed by the owner or owners with the management of the Madison, so tnat he was generally known as the master or captain thereof.

If the jury find from the evidence that the Madison was used for the towing of said flat boat without the knowledge or consent of the owner or agent thereof, by persons having no authority from said agent or owner, to use said boat Madison, or by the person generally known as the master or captain thereof, they will find for the defendant.

The court then gave the following instruction at the instance of the defendant.

If the jury believe from the evidence that when Robbins made the contract for the towing of said wood boat, he was informed that said Thomas Rawlings was not the captain, owner, agent or consignee of said Madison, and that the proper officers were not at the time using the said Madison, the plaintiff cannot recover on the contract of said Thomas Rawlings, although he may on former occasions have acted as the captain of said boat Madison.

Although the jury believe the original contract was, that the wood boat should be left at the foot of Ashley street, yet the parties might alter or change its terms, and if the person making the contract sent another person to show where said flat boat should be landed by the Madison, and it was landed safely in pursuance of the directions of the persons thus placed in charge of it by its owners, the jury will find for the defendant.

The jury returned a verdict for the plaintiff.

Thereupon the defendant filed his motions and reasons for a new trial, as follows :

1. For the reason that the court refused to permit the witness Sturgeon to testify.

2. Because the verdict is against law.

3. Because the verdict is against evidence and the weight of evidence.

4. Because the verdict is against the instructions of the court.

5. Because the court erred in its instructions to the jury.

Which motion the court overruled, and the defendant duly excepted, and the case is brought to this court by appeal.

## WELLS & BUCKNER, BLENNERHASSET & SIMMONS, for appellant.

1. The defendant submits that the court below erred in not permitting the witness, Sturgeon, to testify. He was the security on the bond given to release the boat, but this did not render him incompetent. This proceeding was commenced under the new code, and by the 25th art. 1st sec., "no person shall be excluded as a witness, by reason of his interest in the event of the action." He cannot, with any propriety, be said to be a party to the suit; notwithstanding the judgment might be rendered against him in the event of a recovery against the boat.

The construction of the court defeats one of the principal objects of the new code, which was toab olish the distinction between competency and credibility, and withdraw all question touching the admissibility of witnesses from the court, and leaving them with the jury. It is an attempt to deprive a party of the testimony of witnesses, because of a contingent liability on their part.

II. The second instruction given by the court, at the instance of the plaintiff, was outside of the case; not predicated upon any issue between the parties, and calculated to mislead the jury. It is an abstract proposition, which, if true, was improper in the court to give. There could be nothing to be gained by it, so far as the merits of the case are concerned, but to prop up the testimony of the witness Robbins. If that be the object, it was calculated to mislead the jury, by putting the question of credibility, entirely upon the existence or non-existence of a legal liability. It assumes, that if Robbins is under no legal liability, h · ought to be believed, and his testimony credited. It took the question of credibility from the jury and gave it to the court. It was an attempt to give a fictitious weight to the evidence of the witness, by obtaining the endorsement of the court.

III. The fourth instruction, asked by defendant, and refused by the court, embodies a cor-

rect principle of law, and should have been given by the court. It assumes, that if the flat were agreed to be towed at the risk of the owners or persons having charge of said flat, the Madison was not liable for the loss of the boat, unless it occurred by the gross negligence or carelesness of the officers of the Madison. There was abundant evidence in the case to predicate this instruction upon, and its refusal by the court was clearly erroneous.

IV. The law under which this proceeding was had, is of statutory origin, and in derogation of common right. Like all remedies of the kind, it should be strictly construed. To make the boat liable in this action, the contract, by the mal-performance of which the damages decreed, must have been made "by the master, owner, agent or consignee" thereof, (R. S. 1845, p. 184.) In this case, the attempt is made to make the boat liable, on account of a contract made with the master. He must be master in order to bind the boat. If he is a mere trespasser or usurper, who has obtained possession of the boat by wrong or force, it will not be pretended that the boat is liable for his acts or contracts. He must be the actual master, if not the rightful master. He must have authority, express or implied, from the owners; and whether he has that authority is a question of fact for the jury. In this view of the case, we hold that the court erred in refusing the first instruction asked by defendant, and others of a similar character.

V. The proposition of law, contained in the first instruction asked by plaintiff and given by the court, is much too broad, and under the circumstances of the case, was calculated to mislead the jury. It assumes that if Rawlings, at some prior time, had used the Madison and acted as commander thereof, with the consent and knowledge of the owner, and at the time of the alleged contract, had her under his control, and was acting as her commander, he was competent to make a contract binding upon her. In other words, if he had at any time before, a rightful authority to use the boat; if that authority should afterwards be revoked, and he obtain a wrongful and tortuous possession, that his contracts are obligatory on the boat, while he has this wrongful possession.

VI. But assuming that the instructions of the court, as given, contain a correct exposition of the law, the verdict is clearly against the instructions, and the court should have granted a new trial. There is no evidence that Thos. Rawlings was generally known as master or Captain of the Madison, at any time, and certainly not at the time or about the time the contract was made. Some of the witnesses state that in the spring, he had towed craft and acted as master on one or two occasions, but there is a total absence of testimony that he was generally known as the master of the Madison. The verdict was against the evidence as well as the instructions of the court.

TODD & KRUM, for appellees.

The main question arising upon the facts of this case is, whether the plaintiff has a *lien* upon the boat seized, for his damages for the loss of his property, by reason of the mal-performance of the alleged contract of assignment.

We maintain that he has such lien under the act concerning boats and vessels, upon the facts found by the verdict of the jury under the instructions of court below.

I. The instructions given by the court are correct, because they leave the whole matter to the jury, to say whether, from the evidence the contract of affreightment was made with a person then having said boat under his control, and acting as commander thereof. There was evidence tending to show that Tho. Rawlings, during the same season, and only a short time before, had frequently acted as master of said boat, under circumstances justifying the presumption that he acted as such master, with the knowledge and consent of the owner of the boat.

There was evidence also tending to show that the loss of the property in question, was by reason of the mal-performance of the contract of affreightment—that the towing was negli-

gently and unskillfully performed. A l these matters of fact were properly left by the instructions of the court to be determined by the jury.

II. It was the province of the jury to weigh the whole evidence, and the court below, on the motion for a new trial, refused to disturb the finding of the jury, and this court will not reverse the judgment merely because it may appear from the record that the verdict was against the weight of evidence. The record shows that there was conflicting testimony in relation to nearly all of the material in controversy. This fact is a sufficient answer to the point made by the appellant, that the verdict is against the weight of evidence. 5 Mo. R. 529; 8 Mo. R. 431.

III. The verdict was not against the instructions of the court below, for there was evidence proving, or tending to prove every material fact, which the court below instructed the jury they must find, to entitle the plaintiff to a verdict.

IV. The court below did not err in refusing to give to the jury the instructions asked by defendant numbered 1, 2, 3, 4 and 5 in the record; because the court of its own motion had given the substance of the said instructions, numbered 1, 2, 3 and 5, in a much better form. In fact, in much stronger and more explicit language. The defendant, therefore, has no cause of complaint. This point has repeatedly been decided by this court.

As to the instruction, number 4, refused by the court below, we say it was properly refused, because there was no evidence on which to found it. The language of this 4th instruction, is too strong and broad for any facts established in evidence; therefore this instruction was calcu ... d to mislead the jury.

V. The court below did not err in refusing to allow Sturgeon, one of the sureties in the bond, to testify. The bond was taken under the 9th section of the act concerning boats and vessels, Rev. C., p. 182. The 21st section of the same act, p. 185, provides in such cases, that "the judgment shall be rendered against the principal and security on the bond."

The witness offered, was, therefore, in legal contemplation, a party to the action, as well as directly interested in the event of the suit.

The provision of the 1st section of the 24th article of the act of 1849 does not apply.

It is a contradiction of terms to say that the security in the bond is not a party to the action or record, and yet take judgment against him.

If the defendant wished to use the security in the bond as a witness, he should have obtained leave of the court to substitute other security.

But this point is met and answered by the record itself in this case. The plaintiff voluntarily admitted the statement, in evidence, which the witness offered, would have been allowed to testify. The defendant, therefore, has sustained no injury, for he had the benefit of the testimony offered. The same facts that the defendant expected to prove by the witness, Sturgeon, were already fully established by uncontradicted testimony before the jury to which was superadded the voluntary admission of the same facts by the plaintiff.

VI. The second instruction given by the court at the instance of the plaintiff asserts a correct rule of law, and was applicable to the case. Robbins, the bailee of the flat boat, (one of the subjects in controversy) was a witness in the case, and the question of liability for the loss of the boat, affected his credibility. It was as proper for the court to declare the law, upon the facts in the case, as to the extent of his liability, in order that the jury might have a rule by which to test the credibility of the witness.

RYLAND, J., delivered the opinion of the court.

From the above statement, it becomes necessary for this court, to look into the action of the court below in excluding the testimony of the witness Sturgeon, and in giving, and refusing to give the instructions.

The testimony given before the court below is very conflicting, and I should feel unwilling to disturb the finding in all such cases, if the instructions given or refused to be given and the acts and rulings of the court in other matters be correct.

I am satisfied, that under the provisions of the new code of "Practice in Courts of Justice" the witness, Sturgeon, was competent, and his testimony ought to have been received. This too, without any other substitution in the forth-coming bond. Sturgeon was not a party; he was only liable upon a contingency; and this liability affected only his credibility; did not extend to incompetency. The 1st section of the 25th article new code of practice, is in these words: "No person offered as a witness shall be excluded by reason of his interest in the event of the suit."

The defendants appeared to do away with this interest, by substituting another name in the bond. This was objected to by plaintiff, and the witness was declared incompetent. The plaintiff now contends, that as he at the same time admitted a statement of Mr. Sturgeon, to be read to the jury, that this takes away the error of the court below. That the defendant was not injured by such objection on the part of the plaintiff, and such ruling of the court.

We cannot say that this is so. The witness may have been important in other respects to the defendant. Why shall the plaintiff object to the witness, and have him declared incompetent, and then admit a statement of the witness? I am unable to say, that the defendant was not prejudiced by this witness. It is in my opinion error.

The instructions given for the plaintiff will next demand my attention. The second instruction is totally outside of the controversy and should not have been given, although I might not be inclined to reverse alone from this instruction; as the case will have to be retried, I mention it in order that it may be avoided next trial.

The language of the first instruction is too broad, too general. Thomas Rawlings might have had said boat under his control; he might have been exercising acts of authority over the boat entirely against the will, authority and command of the real owners, as a trespasser. The conclusion of the instruction, is such that it might easily have misled the jury.

From the evidence preserved in the bill of exceptions, the court should have given the fourth instruction asked as above by the defendant, which was, "if the jury believe from the evidence, that the owners or persons having charge of said flat boat, agreed, that the towing of the same, would be at their own risk, then the Madison is not liable, un-

less it is clearly proven, that the loss of the flat boat was occasioned by gross negligence or mismanagement of the persons navigating said Madison."

The other instructions refused by the court, have nearly the same principles embraced in them as in those given by the court of its own motion, and find no fault in refusing them in such circumstances.

The court below erred in excluding Sturgeon as a witness. It should not have given the second instruction, and the first instruction was calculated to mislead the jury.

The judgment below must therefore be reversed, and cause remanded for further proceedings, not inconsistent with this opinion.